*Mutual Fund Opt-Out Plaintiffs v. Calamari*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2025

(Argued:  December 5, 2025     Decided:  July 9, 2026)

Docket No. 24-3205

MUTUAL FUND OPT-OUT PLAINTIFFS,

*Movant-Appellants*,

INFINITY Q DIVERSIFIED ALPHA FUND,

*Defendant*,

–v.–

ANDREW M. CALAMARI,

*Special Master-Appellee*,

UNITED STATES SECURITIES & EXCHANGE COMMISSION,

*Plaintiff*.[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as reflected above.

Before:      ROBINSON, MERRIAM, and KAHN, *Circuit Judges*.

This case requires us to consider the reach of the Anti-Injunction Act, 28 U.S.C. § 2283, and the so-called "in aid of jurisdiction" exception to its prohibition of federal court injunctions against state court actions.

Movant-Appellants Mutual Fund Opt-Out Plaintiffs ("the Opt-Out Plaintiffs") appeal from an order of the United States District Court for the Southern District of New York (Castel, *J.*) permanently enjoining their claims in state court against Quasar Distributors, LLC, ("Quasar") arising from the collapse of a mutual fund for which Quasar served as underwriter.

This action was initiated by the SEC against a series mutual fund ("Mutual Fund") of the Trust for Advised Portfolios ("TAP") after the Mutual Fund's collapse; the district court appointed a Special Master to oversee the distribution of the remnants of the Mutual Fund—known as the "Special Reserve." Quasar is not a party to this federal court action, but the district court enjoined the state actions against it. The district court reasoned that an injunction was necessary in aid of its jurisdiction because state court actions against Quasar created potential and actual legal obligations by TAP, as indemnitor, that the Special Master would be required to pay through the Special Reserve. These indemnification obligations threatened to dissipate the remaining assets in the Special Reserve and undermined the Special Master's goal of distributing the remaining assets of the fund *pro rata* to defrauded shareholders—which included the Opt-Out Plaintiffs and those who had previously received compensation and released their claims against the Mutual Fund in a class action settlement approved in state court.

The Opt-Out Plaintiffs argue that the injunction is proscribed by the Anti-Injunction Act because it is not "necessary in aid of [the district court's] jurisdiction." 28 U.S.C. § 2283.

We agree. The "in aid of jurisdiction" exception to the Anti-Injunction Act is generally reserved for a state court action that involves possession or control of a *thing* like a pool of money. Potential judgments against persons arising from state court *in personam* actions do not interfere with a federal court's *in rem* jurisdiction over property. *Wyly v. Weiss*, 697 F.3d 131, 137–

2

38 (2d Cir. 2012). That's the case here. The Opt-Out Plaintiffs' state court actions do not threaten the federal court's jurisdiction over the Special Reserve. And the narrow exception to this general rule that we recognized in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), does not apply on these facts. We thus VACATE the injunction and REMAND for further proceedings consistent with this opinion.

LAWRENCE M. ROLNICK (Michael James Hampson, *on the brief*), Rolnick Kramer Sadighi LLP, New York, NY, *for Movant-Appellants*.[†]

DANIEL SCOTT NOBLE, KKL LLP, New York, NY (Benjamin Arrow & Eliyahu Yampel, Finn Dixon & Herling LLP, Stamford, CT, *on the brief*), *for Special Master-Appellee.*

ROBINSON, *Circuit Judge*:

This case requires us to consider the reach of the Anti-Injunction Act, 28 U.S.C. § 2283, and the "in aid of jurisdiction" exception to the prohibition of federal court injunctions against state court actions.

Movant-Appellants Mutual Fund Opt-Out Plaintiffs ("the Opt-Out Plaintiffs") appeal from an order of the United States District Court for the Southern District of New York (Castel, *J.*) permanently enjoining their claims in

[†] After briefing and oral argument were complete, this firm changed its name to Rolnick Kramer Securities Litigation LLP.

3

state court against Quasar Distributors LLC, ("Quasar") arising from the collapse of a mutual fund for which Quasar served as underwriter.

This action was initiated by the Securities and Exchange Commission ("SEC") against Infinity Q Diversified Alpha Fund (the "Mutual Fund" or the "Fund"), a series mutual fund of the Trust for Advised Portfolios ("TAP") after the Mutual Fund's collapse; the district court appointed a Special Master to oversee the distribution of the remnants of the Mutual Fund—known as the "Special Reserve." Quasar is not a party to this federal court action, but the district court enjoined the state actions against it. The district court reasoned that the injunction was necessary in aid of its jurisdiction because state court actions against Quasar created potential and actual legal obligations by TAP, as indemnitor, that the Special Master would be required to pay through the Special Reserve. These indemnification obligations threatened to dissipate the remaining assets in the Special Reserve and undermined the Special Master's goal of distributing the remaining assets of the fund *pro rata* to defrauded shareholders—both the Opt-Out Plaintiffs and those who had previously received compensation and released their claims against the Mutual Fund in a class action settlement approved in state court.

The Opt-Out Plaintiffs argue that the injunction is proscribed by the Anti-Injunction Act because it is not "necessary in aid of [the district court's] jurisdiction." 28 U.S.C. § 2283.

We agree. The "in aid of jurisdiction" exception to the Anti-Injunction Act is generally reserved for a state court action that involves possession or control of a *thing* like a pool of money. Potential judgments against persons arising from state court *in personam* actions do not interfere with a federal court's *in rem* jurisdiction over property. *Wyly v. Weiss*, 697 F.3d 131, 137–38 (2d Cir. 2012). That's the case here. The Opt-Out Plaintiffs' state court actions do not threaten the federal court's jurisdiction over the Special Reserve. And the narrow exception to this general rule that we recognized in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), does not apply in these facts.

For the reasons set forth more fully below, we thus VACATE the injunction and REMAND for further proceedings consistent with this opinion.

**BACKGROUND**

This case involves the fallout from the collapse of the Mutual Fund, a series mutual fund of TAP.[1] For several years, James Velissaris, the chief investment

---

[1] For purposes of this background discussion, we rely primarily on the facts as alleged in the SEC's complaint in the district court. The Opt-Out Plaintiffs do not contest this account.

officer of Infinity Q Capital Management, LLC, ("IQCM") who served as the Mutual Fund's investment adviser, artificially inflated the net asset values of the Mutual Fund's underlying holdings. As a result, investors bought and sold their holdings at materially inflated values.

When this situation came to light in February 2021, IQCM and TAP requested that the SEC intervene pursuant to its authority under section 22(e)(3) of the Investment Company Act of 1940. In response, the SEC ordered the Mutual Fund to suspend redemptions and to liquidate its holdings. Liquidation yielded $1.25 billion, representing about a $500 million shortfall from the most recently reported net asset value.

Under the SEC's supervision, from December 2021 through February 2022 the Mutual Fund made an interim distribution of $500 million to the Fund's current shareholders. The remaining assets were put into a Special Reserve "of approximately $750 million to cover the Fund's current and future expenses and potential liabilities including for class action lawsuits pending in state and federal courts against the Fund, as well as legal fees and potential indemnification claims against the Fund." App'x 32. After consultation with the SEC, the Mutual Fund reduced the Special Reserve soon thereafter by distributing another $170 million

to shareholders. TAP's Board of Trustees also created a Special Litigation Committee to investigate any claims the Mutual Fund might be able to pursue.

In the meantime, a wave of litigation by injured investors followed the collapse of the Mutual Fund. Beginning in December 2021, TAP and the Fund participated in mediation of several state and federal class action suits, culminating in a proposed class action settlement in New York state court. The proposed settlement, filed in the New York state court in September 2022, provided for the establishment of a cash settlement fund of up to $48 million and for the release of claims against TAP, the Mutual Fund, and IQCM, along with the Mutual Fund's auditor, EisnerAmper LLP ("EisnerAmper"); its underwriter, Quasar; and its administrator, accountant and custodian, U.S. Bancorp Fund Services, LLC ("Bancorp"). The settlement was funded through contributions from the various defendants; funding for the settlement was not drawn from the Special Reserve.

When the proposed settlement was still pending in state court, in November 2022, the SEC filed this federal action against the Mutual Fund. In January 2023, by consent of the SEC and the Mutual Fund, the district court entered an order with three key components. First, the order provided that the district court has "exclusive jurisdiction over the Special Reserve and over all matters arising out of,

7

and related to, the Special Reserve." App'x 34. Second, it appointed Appellee Andrew Calamari as Special Master to manage the Special Reserve, implement the plan of distribution to shareholders, and pay from the Special Reserve any expenses and liabilities of the Mutual Fund, among other duties. Third, it stayed litigation of all "Ancillary Proceedings," as defined by the order. *Id.* at 41–42. The order excluded from the litigation stay the mediated class actions discussed above, any enforcement actions by the SEC or the federal government, any litigation by the Special Litigation Committee on behalf of the Mutual Fund, and other enumerated actions.

In the meantime, in December 2022, also while the state court settlement proposal was pending, investors who chose to opt out of the settlement, known as the "Opt-Out Plaintiffs"—Appellants here—sent their opt-out notices to the settlement administrator and then filed their own state court actions seeking damages for violations of the Securities Act against the Mutual Fund and its officers, as well as IQCM, Bancorp, EisnerAmper and Quasar, in New York state court. *See Glenmede Trust Co., N.A. v. Infinity Q Capital Management LLC*, No. 160830/2022 (N.Y. Sup. Ct. Comm'l Div. filed Dec. 19, 2022); *Carson Family 2013 Dynasty Trust v. Infinity Q Capital Management LLC*, No. 160834/2022 (N.Y. Sup. Ct. Comm'l Div. filed Dec. 19, 2022); *Flint Hills Diversified Strategies, L.P. v. Infinity Q*

8

*Capital Management LLC,* No. 160964/2022 (N.Y. Sup. Ct. Comm'l Div. filed Dec. 20, 2022).[2]

In response, various defendants in the state court actions invoked the litigation stay set forth in the district court's consent order in this case to try to halt the state court actions. The Opt-Out Plaintiffs then moved to intervene in the federal action, arguing that the stay should be modified to allow their suits to proceed. The SEC and the Special Master negotiated with the Opt-Out Plaintiffs for an amended litigation stay, which was entered by the district court in March 2023. The amended order allowed the Opt-Out Plaintiffs' state court actions to proceed against IQCM, EisnerAmper, Bancorp, and Quasar, but not against the Mutual Fund and its officers. In turn, the Opt-Out Plaintiffs withdrew their motion to intervene in this action. The amended order preserved the rights of the SEC, Special Master, and Opt-Out Plaintiffs to move to modify the stay of litigation for good cause.

Later that year, the New York state court gave final approval to the $48 million mediated settlement in the class action against various defendants. *In*

---

[2] The *Glenmede Trust* action is the lead state court Opt-Out case, and the state court ordered that all filings and rulings of the court with respect to that case apply equally to the other two Opt-Out cases. Accordingly, in our discussion we do not distinguish among the several Opt-Out Plaintiffs' state court actions, and we instead refer generally to the Opt-Out Plaintiffs.

*re Infinity Q. Diversified Alpha Fund Securities Litigation*, No. 651295/2021, 2023 WL 8846591, at *9 (N.Y. Sup. Ct. Dec. 21, 2023). The settlement fund, held in an escrow account, was in that state court's custody and subject to its jurisdiction until distribution. The Opt-Out Plaintiffs were not entitled to and did not receive any distribution from this settlement.

Because this settlement "fully resolved" the mediated class actions "without the contribution of any money from the Special Reserve and substantially reduced the litigation exposure faced by the Fund and its Indemnitees," Dist. Ct. Dkt. No. 89 at 1–2, the Special Master in this case—with approval from the federal district court—distributed an additional $487 million of Special Reserve funds to shareholders. That left about $100 million in the Special Reserve for payment of legal costs and judgments against the Mutual Fund and its indemnitees.

As relevant here, the potential liability to indemnitees arose from TAP's contractual indemnification obligations to Quasar in connection with duties performed by Quasar for the Mutual Fund. Under TAP's agreement with Quasar, it is obligated to indemnify Quasar for claims arising from, among other things, TAP's "bad faith, negligence, or willful misconduct" in performance of its duties or any allegedly untrue statements in TAP's reports to shareholders, unless the claim arises from statements made in reliance on written communications

provided by Quasar. App'x 141. Importantly, the agreement provides broadly that TAP "*shall* advance attorney's fees and other expenses incurred" by Quasar in defending any "suit which is the subject of a claim for indemnification." *Id.* at 142 (emphasis added).

As a result of TAP's contractual advancement obligation, the Special Master paid monies from the Special Reserve for Quasar's legal defense in the Opt-Out Plaintiffs' state court actions. By May 2024 the Special Master had paid more than $425,000 from the Special Reserve for that purpose. In this context, the compromise allowing the Opt-Out Plaintiffs to pursue their state court claims against the Fund's various indemnitees didn't last. In a court-approved May 2024 agreement citing a need "to prevent the dissipation of the Special Reserve as a result of legal fees and costs that the [Mutual] Fund is obligated to continue to pay on behalf of certain Indemnitees in connection with the Opt-Out Actions," the Opt-Out Plaintiffs agreed to extend the litigation stay to their state court actions against Quasar "until 7 days after written notice . . . by the Opt-Out Plaintiffs," which was not to be given before July 9, 2024. *Id.* at 123. The Agreement preserved the Opt-Out Plaintiffs' right to challenge the district court's authority to stay their state court actions.

The Opt-Out Plaintiffs gave notice of the expiration of the stay on July 10, 2024, prompting the Special Master to seek an order permanently enjoining all current and future lawsuits against the Mutual Fund's indemnitees, specifically Quasar. The Special Master argued that because the Fund has an obligation to advance Quasar's legal fees, and potentially to indemnify Quasar for any judgment, the ongoing state court litigation against Quasar would lead to a depletion of the Special Reserve. That depletion would interfere with the Special Master's proposal, subject to the court's approval, to distribute as much money as possible to all of the defrauded shareholders on a *pro rata* basis.

After briefing by the parties, in November 2024, the district court granted the Special Master's request and permanently enjoined the Opt-Out Plaintiffs' state court claims against the Fund, the Special Master, TAP and Quasar. The court concluded that this injunction was authorized by the All Writs Act, 28 U.S.C. § 1651, because it was "necessary" to (1) "protect the [c]ourt's exclusive jurisdiction over the limited *res*"—the Special Reserve; (2) "prevent the dissipation of the Fund's remaining assets due to the Fund's advancement and indemnification obligations"; and (3) "achieve a pro rata distribution" of those "remaining assets to defrauded shareholders that is fair and equitable to all shareholders." Special App'x 1.

By request of the Special Master, the injunction carves out any counterclaims by EisnerAmper against TAP, on behalf of the Fund, in TAP's ongoing state court action against EisnerAmper for its alleged role in the Fund's collapse. In addition, the injunction does not apply to the Opt-Out Plaintiffs' state court claims against EisnerAmper and Bancorp. TAP determined that it does not have an obligation to indemnify EisnerAmper or Bancorp and is seeking to enforce a contractual indemnification provision *against* Bancorp for losses flowing from Bancorp's negligence.

In this appeal of the permanent injunction, the Opt-Out Plaintiffs challenge only that aspect of the district court's injunction that prohibits them from pursuing their state court securities law claims against Quasar.

## DISCUSSION

### I. The Parties' Arguments

On appeal, and as relevant here, the Opt-Out Plaintiffs argue primarily that the injunction violates the Anti-Injunction Act, 28 U.S.C. § 2283. They contend that the injunction does not fit within the narrow "in aid of jurisdiction" exception to the general prohibition against federal court injunctions of state court actions because no conflict of federal and state *in rem* jurisdiction exists. They contend that this federal litigation is "an *in personam* action against the Mutual Fund," and

13

that the district court's authority over the Special Reserve "does not transform the nature of the [district c]ourt's jurisdiction." Appellants' Br. at 34. They contrast this circumstance with bankruptcy or receivership proceedings in which there is a statutory basis for *in rem* jurisdiction over a collection of assets. *Id.* at 35.

The Opt-Out Plaintiffs contend that even if the district court does have *in rem* jurisdiction over the Special Reserve, the injunction is improper because their state court securities lawsuits are indisputably *in personam* actions seeking to establish the various defendants' liability under the Securities Act, which cannot threaten the district court's control over the Special Reserve itself. And they argue that the injunction doesn't fall within the narrow exception to the general bar on federal courts enjoining state *in personam* actions that this Court carved out in *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985).

Moreover, the Opt-Out Plaintiffs argue that even if there were a potential *in rem* jurisdictional conflict, the record does not establish that the injunction is "necessary" to aid the court's jurisdiction because it doesn't establish that Quasar's indemnity claim against TAP would be viable and collectible from the Special Reserve. And the Opt-Out Plaintiffs emphasize that the untenable logical consequence of the Special Master's position is that "any insolvency proceeding[]—whether in bankruptcy or receivership—justifies sweeping

14

injunctions of claims against *non-debtors* so long as [the non-debtors] have claims for indemnity against the debtor." Appellants' Br. at 22 (emphasis added).[3]

In response, the Special Master argues that the injunction falls under the district court's broad authority to protect its exclusive jurisdiction over a limited "*res*," the Special Reserve, and to effectuate a distribution plan without competing claims or further dissipation of the Fund's remaining assets. According to the Special Master, the decisive factor under *Baldwin-United* isn't whether an action is *in rem* or *in personam*, "but rather whether there is a practical need" to prevent the state court from interfering with the federal court's exercise of jurisdiction over a *res*. Appellee's Br. at 41. Such a need exists here, the Special Master contends, because further litigation of the Opt-Out Plaintiffs' state court claims would force TAP to draw against the Special Reserve to advance money to Quasar, its indemnitee, for its legal fees in that suit, undermining the Special Master's goal of distributing those remaining assets equitably to shareholders.

---

[3] The Opt-Out Plaintiffs also argue that cutting off claims against Quasar on the ground that it is a potential indemnitee of TAP would run afoul of the remedial scheme of the Securities Act, which imposes joint and several liability on statutory defendants, including underwriters, to protect plaintiffs from the risk that any one defendant becomes insolvent. *See* 15 U.S.C. §§ 77k(a)(2)–(5), (f)(1). They further contend that the injunction violates their due process rights by rendering their right to opt out of the class settlement illusory with respect to defendants against whom their claims are now enjoined. And they argue that the injunction is impermissibly vague and unsupported by factual findings. The Special Master disagrees. Because we resolve this appeal on the basis of the Anti-Injunction Act, we do not reach these arguments.

## II.    Analysis

We review the district court's issuance of an injunction for abuse of discretion, its factual findings for clear error, and its interpretation of the All Writs Act and the Anti-Injunction Act, along with other questions of law, without deference. *Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012); *see also Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004).

Considering the Anti-Injunction Act and precedential decisions applying that statute, we conclude that the Anti-Injunction Act does not authorize the district court's injunction against the Opt-Out Plaintiffs' state law claims against Quasar. We start with the legal lay of the land before considering the application of the Anti-Injunction Act here.

> *A. The All Writs Act, the Anti-Injunction Act, and* In Personam *State Court Actions*

The All Writs Act grants federal courts broad authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act limits that authority by providing that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of

16

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Anti-Injunction Act, originally enacted in 1793, reflects "the essentially federal nature of our national government": we have a "dual court system" in which state and federal legal systems "proceed[] independently of the other with ultimate review in [the Supreme] Court of the federal questions raised in either system." *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 285–86 (1970).[4] Congress recognized that "this dual system could not function if state and federal courts were free to fight each other for control of a particular case." *Id.* at 286.

To prevent "needless friction" and "make the dual system work," the Anti-Injunction Act sets "lines of demarcation" between state courts and lower federal courts. *Id.* Thus, the Anti-Injunction Act "in part rests on the fundamental constitutional independence of the States and their courts," and embodies the principle that "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from

---

[4] In quotations from caselaw, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

error, if any, through the state appellate courts and ultimately [the Supreme] Court." *Id.* at 287.

For those reasons, we construe the exceptions to the Anti-Injunction Act's limit on federal injunctions of state court proceedings narrowly. *Id.; see Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (stating that the "three specifically defined exceptions . . . are narrow"). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line*, 398 U.S. at 297.

Here, we consider the scope of the "in aid of [] jurisdiction" exception to the Act. 28 U.S.C. § 2283. That exception "is generally reserved for state court actions *in rem*." *Wyly*, 697 F.3d at 137. An *in rem* action seeks to determine "the status of a thing, and therefore the rights of persons generally with respect to that thing." *In Rem*, BLACK'S LAW DICTIONARY (12th ed. 2024). The "thing" is also known as a "*res*." *Retirement Systems*, 386 F.3d at 426. A *res* may be a physical object or a pool of money. Where a federal court acquires *in rem* jurisdiction first, it can enjoin a state *in rem* proceeding regarding the same *res* because "exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the

jurisdiction of the federal court already attached." *Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922).

That rule generally does not extend to a parallel *in personam* proceeding in state court. An *in personam* action seeks to determine "the personal rights and obligations of the parties." *In Personam*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also id.* ("[T]he effect of a judgment in [an *in personam*] action is merely to bind the parties to it."); *see Wyly*, 697 F.3d at 138 (noting that "an *in personam* action involves a controversy over liability rather than over possession of a thing"). Because personal liability "does not involve the possession or control of a thing," a state court action to "enforce [it] does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Kline*, 260 U.S. at 230. For that reason, since its decision in *Kline*, "the Supreme Court has never held that a district court may enjoin, as necessary in aid of [its] jurisdiction, a parallel *in personam* state action." *Retirement Systems*, 386 F.3d at 426.

However, this Court has recognized that an injunction against a state *in personam* proceeding may be necessary in aid of the federal court's jurisdiction in certain "exceptional circumstances." *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013). In the one hundred years since *Kline*, we have identified

19

circumstances that justify such an injunction in only one case: *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985).

There, over 100 federal securities suits were consolidated into a multidistrict class action against broker-dealers. *Id.* at 331. Of the 100,000 members of the plaintiff class, fewer than 400 "chose to opt out of the action." *Id.* at 332. The district court coordinated settlement talks for two years. *Id.* After the parties reached a settlement agreement as to 18 of the 26 defendants, the representatives of 40 states determined that the proposed resolution did not provide adequate compensation to plaintiffs. *Id.* Authorities in numerous states began issuing subpoenas to defendants, aiming to enforce state laws that authorized restitution and then to use any monetary recovery to pay additional compensation to class action plaintiffs residing in their respective states. *Id.* at 332–33. The possibility of such suits threatened to undo the district court's almost consummated settlement efforts—both as to the 18 cases that had already settled and were awaiting final approval and the eight that were likely to settle in the near future.

Faced with this prospect, the district court temporarily enjoined the commencement of any action against defendants in the multidistrict litigation "on behalf of or derivative of the rights of any plaintiff" or that "may in any way affect the rights of any plaintiff." *Id.* at 334. The court provided that the injunction

20

would continue in effect until the entry of final judgment in all of the federal multidistrict proceedings. *Id.*

On appeal, this Court affirmed the injunction as "necessary or appropriate in aid of" the district court's jurisdiction under the All Writs Act. *Id.* at 338. We acknowledged the general rule that the All Writs Act does not support injunctions against state *in personam* actions but concluded that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *Id.* at 337. We noted that once the 18 settlements were approved by the district court, the court unquestionably could have entered an order to "forestall[] relitigation of those judgments." *Id.* at 336. We also explained that the injunction was based at least in part on the district court's "conviction that the state actions were improperly being brought for harassing and vexatious purposes" to "coerc[e] the defendants to pay more funds into the federal settlement pool." *Id.* at 339. Thus, "our interest in preserving federalism and comity with the state courts [was] not significantly disturbed" by the injunction. *Id.* at 337.

Since *Baldwin-United*, we have cautioned repeatedly against reading its exception too broadly and have declined to extend its holding to novel circumstances. In *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, we

21

clarified that *Baldwin-United* "did not create a blanket rule or presumption" that a federal court managing complex litigation "may enjoin parallel state proceedings." 386 F.3d at 427. There, a federal court presiding over a securities class action arising from the collapse of a major company ordered an Alabama state court to postpone trial of a pending case by opt-out plaintiffs until the federal trial was complete. *Id.* at 421–23. We noted that unlike in *Baldwin-United*, no "prompt settlement" was impending. *Id.* at 428. Applying "the *Kline* rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions" in federal court, *id.*, we vacated the injunction, *id.* at 430–31.

In *Wyly v. Weiss*, we reaffirmed that the "in aid of jurisdiction" exception to the prohibition of federal injunctions against state proceedings generally applies only to state court actions *in rem* because the state court's exercise of jurisdiction may defeat the federal court's jurisdiction over a *res*. 697 F.3d 131. There, after the federal court approved a securities class action settlement, the plaintiffs learned that the defendants had improperly withheld documents. *Id.* at 135. When the federal court denied class members relief from the settlement order, plaintiff Wyly sued class counsel in state court for legal malpractice. *Id.* at 136. Invoking both the "in aid of jurisdiction" exception and the relitigation exception to the Anti-

22

Injunction Act, the federal district court enjoined the state malpractice action to protect its own determination that class counsel had provided adequate representation and was entitled to fees. *Id.* at 136–37.

On appeal, we rejected class counsel's arguments that the *Baldwin-United* exception applied because the federal court had overseen the "complex, large-scale proceedings" for years and had "expressly retained exclusive jurisdiction" over the parties "for all matters relating to the Class Action." *Id.* at 139. As in *Retirement Systems*, we cautioned that "involvement in complex litigation" is not enough to justify "issuance of an injunction 'in aid of' the court's jurisdiction." *Id.* We upheld the injunction only because it was independently justified by the relitigation exception. *Id.* at 144.

And in *United States v. Schurkman*, we explained that the *Baldwin-United* exception "relied on the exceptional circumstances of that case—the case's extraordinary complexity and multidistrict nature, the fact that 18 of the 26 defendants had already settled, and the fact that there was a substantially significant prospect that the remaining 8 defendants would settle in the reasonably near future." 728 F.3d at 137–38. In *Schurkman*, the federal court presided over an environmental enforcement action that was settled by a consent decree that provided that the appraised value of a parcel of land owned by the defendant

would be unreviewable. *Id.* at 131–33. After the defendant unsuccessfully challenged the appraised value in federal court, he sued the appraiser in state court for fraud and negligent misrepresentation. *Id.* at 131. The federal district court permanently enjoined that state court proceeding. *Id.* at 131, 134, 138 n.4.

Because the case was "easily distinguished" from *Baldwin-United*, we "decline[d] to extend" the exception "beyond the exceptional circumstances of that case." *Id.* at 138. We noted that *Baldwin-United* involved a temporary injunction set "to expire upon entry of final judgment in all of the multidistrict proceedings in federal court, thus posing less of a risk to fundamental constitutional independence of the States and their courts." *Id.* at 138 n.4. "By contrast, the injunction in [*Schurkman*], if permitted to stand, would be permanent in nature, and would seriously undercut principles of comity." *Id.*

In sum, since *Baldwin-United*, we have consistently adhered to the Supreme Court's reasoning in *Kline* and have limited the potential extension of "in aid of jurisdiction" injunctions against *in personam* state court actions to the specific and narrow facts that led us to depart from the general rule in *Baldwin-United*.

B. *The Opt-Out Plaintiffs' State Court Actions Against Quasar*

With the above caselaw in mind, we evaluate whether the district court's injunction runs afoul of the Anti-Injunction Act. In determining the question, we

24

need not decide whether this *federal* action is *in personam, in rem,* or *quasi in rem,* because our analysis turns on the nature of Opt-Out Plaintiffs' state court actions, not the label assigned to the federal district court's oversight of the Special Reserve. We assume without deciding that the federal court has properly asserted exclusive jurisdiction over the Special Reserve, whatever label applies, for the purpose of overseeing distribution of the remaining assets of the Mutual Fund.

The question then is whether, under the Anti-Injunction Act, the district court, to protect its exclusive jurisdiction over the Special Reserve, can enjoin the state *in personam* proceedings by the Opt-Out Plaintiffs against non-party Quasar on the basis that Quasar, as an indemnitee of TAP, may have contractual claims against TAP that might be satisfied through the Special Reserve. Pursuant to the caselaw set forth above, the answer is clearly no. We conclude that the Opt-Out Plaintiffs' state court actions fall in the heartland of state court *in personam* actions that cannot be enjoined under the Anti-Injunction Act. Any attempt to analogize this case to *Baldwin-United* fails.

i. Opt-Out Plaintiffs' State Claims Are Run Of The Mill *In Personam* Claims

The Opt-Out Plaintiffs' enjoined state court claims are undisputedly *in personam*: they seek to adjudicate the personal liability of Quasar under the

25

Securities Act. A judgment for the Opt-Out Plaintiffs against Quasar in state court would not involve "exercise by the state court of jurisdiction over the same res"—that is, over the Special Reserve. *Kline*, 260 U.S. at 229. Nor would it "necessarily impair[]" or "defeat" the federal court's jurisdiction over that pool of money. *Id.* By the terms of the federal district court's operative consent order, the Special Master, under the supervision of the SEC and subject to the court's exclusive jurisdiction, has power to oversee distribution of the Special Reserve. A state court judgment for Opt-Out Plaintiffs against non-party Quasar wouldn't change that. "The adjudication of rights in personam simply does not impede the possession or control of the property required for maintenance of an in rem action . . . even when property is within the possession and exclusive jurisdiction of one court." *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 192–93 (2d Cir. 2018). Thus, any judgment against Quasar in the state court action would not "impede" the federal court's "possession and control of the funds themselves." *Id.* at 193. It's a completely distinct case.

The fact that TAP may have a contractual obligation to indemnify Quasar against a future judgment in a later potential suit doesn't alter the analysis. TAP's potential contractual obligations to Quasar are foundational to the Special Master's rationale for seeking to cut off the Opt-Out Plaintiffs' state court claims.

26

But Quasar's potential contract claims against TAP are themselves *in personam* claims. *See In Personam*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A normal action brought by one person against another for breach of contract is a common example of an action *in personam*."). That is, Quasar does not have any legal right to the Special Reserve as such. Any legal claims it may have are *against TAP*; the Special Reserve is simply the pool of money from which TAP may satisfy its obligations to Quasar.

If Quasar secured a state court judgment *against TAP* and then initiated a state court collection action seeking to attach funds in the Special Reserve to satisfy its judgment, *then* the state court action would raise a closer question. But the fact that a judgment for the Opt-Out Plaintiffs in their state court action against Quasar may trigger contractual obligations by TAP to Quasar, which the Special Master may opt to satisfy from the Special Reserve, does not convert the Opt-Out Plaintiffs' *in personam* actions against non-party Quasar into challenges to the district court's jurisdiction over the Special Reserve.

The same goes for TAP's contractual obligation to advance fees to Quasar, which the Special Master identifies as a present threat to the federal court's jurisdiction over the Special Reserve. Like its potential claim for indemnification, Quasar's claim for advancement of fees from TAP is a contractual claim. It's not a

27

claim of ownership of a portion of the Special Reserve. And the fact that Quasar has a contractual advancement right against TAP that is currently being satisfied through the Special Reserve, and may continue to be, does not give the district court a basis for enjoining the Opt-Out Plaintiffs' suits against *Quasar*, effectively extinguishing their claims.

ii.    *Baldwin-United*

So the injunction can only stand if it falls within the narrow *Baldwin-United* exception to the general prohibition on federal court injunctions against state court *in personam* actions. We conclude that it does not.

Remember, *Baldwin-United* addressed extraordinary circumstances. The district court was in the process of reviewing provisionally approved settlement agreements in a massive, multidistrict action, and a number of other settlements were expected shortly; once the court finally approved those agreements, it would clearly have the authority to enjoin state actions seeking to relitigate the judgments; and the court viewed the preliminary steps toward such state actions as "vexatious" attempts to undermine the settlements. *Baldwin-United*, 770 F.2d at 339.

This case is not remotely similar. First and foremost, as set forth above, in contrast to *Baldwin-United*, the state court actions at issue here—against non-

28

parties to this action—have no impact on the district court's jurisdiction and authority over the Special Reserve.

Moreover, the injunction in *Baldwin-United* protected a federal class action on the verge of settlement against state court proceedings that would upend the nearly completed settlement. Here, a *state court* settlement of a class action has already been approved and the money allocated for payout; the Opt-Out Plaintiffs' claims in no way threaten that resolution. Indeed, the injunction here seeks to cut off the claims of those who *haven't* gotten compensation from the consummated settlement in favor of additional distribution by the Special Master of the remaining Fund assets to all investors, most of whom already received payments from a separate settlement fund and accordingly released their claims against the defendants.

And the court in *Baldwin-United* did not permanently enjoin state court actions; it hit the pause button pending its entry of final judgment in the multidistrict litigation. 770 F.2d at 334. The district court's permanent injunction here would forever cut off the Opt-Out Plaintiffs' claims—claims the Opt-Out Plaintiffs preserved by forgoing the benefits of the class action settlement. As we explained in *Schurkman*, a permanent injunction poses greater "risk to [the] fundamental constitutional independence" of state courts and "seriously

29

undercut[s] principles of comity" that animate the Anti-Injunction Act. 728 F.3d at 138 n.4.

Also, in contrast to *Baldwin-United*, there is no reason in this case to believe that the Opt-Out Plaintiffs are using the state court actions "for harassing and vexatious purposes." 770 F.2d at 339. The Opt-Out Plaintiffs are not using their state court claims as a negotiation lever to drive up their recovery in the class action settlement; instead, they are suing to vindicate the very claims they preserved by opting out.

Finally, although this consideration is not essential to our resolution, we note that the Anti-Injunction Act did not apply in *Baldwin-United* because the federal injunction issued *before* suits commenced in state court. *Id.* at 335. *Baldwin-United* considered only whether the injunction was "necessary *or* appropriate in aid of" the district court's jurisdiction under the All Writs Act. 28 U.S.C. § 1651(a) (emphasis added). This case, by contrast, squarely implicates the Anti-Injunction Act's prohibition of federal court injunctions against state court proceedings, and its limited exception for injunctions *necessary* in aid of the district court's jurisdiction.

"Because circumstances similar to those in *Baldwin-United* are absent here, we are bound to apply the general rule that an *in personam* state court action may

not be enjoined" based on potential conflict with this federal action. *Schurkman*, 728 F.3d at 138. We decline to extend the *Baldwin-United* exception to allow a permanent injunction against the Opt-Out Plaintiffs' securities law claims in state court against the Fund's underwriter.

## CONCLUSION

For the reasons above, the district court exceeded its discretion by entering a permanent injunction against the Opt-Out Plaintiffs' state court actions. The district court's order is **VACATED** and the case **REMANDED** for further proceedings consistent with this opinion.